Chancellor Habpek
delivered the opinion of the court.-
Lydia Clegg, at the time of her marriage with Paul Micheau, was seized of a tract of land called Clegg’s Point. In 1795, Mi* cheau mortgaged this land to the trustees of Butler to secure a debt, and in .1801, mortgaged the same land to George ancLSio age Smith, ancLAga-hirff~-L*i09, f<\f.he Winvaw Indigo Society, ' Lydia Micheau died, leaving her husband and five children surviving, on© of whom afterwards died. To these the inheritance descended. Paul Micheau acquired the interest of two of his children in the land. In 182(1, George and Savage Smith, and the other creditors, filed their bill for the foreclosure of their mortgages. There was a decree for foreclosure and sale of the land, and by a decree of the Appeal Court, pronounced in 1822, the proceeds of the land were directed to be distributed as follows, viz: ten fifteenths to the complainants, (the creditors,) Paul Micheau being held to have had that interest in the lands, as distributee of his wife or in right of his children; three fifteenths to Wm. Buford and wife; and two fif. teenths to-the present complainants, Pedrieau and wife. Respect» ing this decree there is no question. The land was sold in 1822, and bid off by Robert F. Withers, who failed to comply with the terms of sale, but paid off the mortgage to Butler, to the amount of $1714.28. In 1825, in consequence of a rule against him, on the part of the administrator of George and Savage Smith, Withers paid into court, the sum of $1734.52, which, by the order of the court, was paid over to Mr. Cuttiuo, the said administrator. In 1822, Withers became the owner ot the shares of Buford and wife, and being both debtor and creditor, the debt was extinguished, and their shares may be regarded as then paid. Robert Withers died insolvent in 1827. On the 1st of April, 1827, the land was resold by the order of the court, at the risk of the former purchaser, and hid off by B. F. Hunt, at the price of $8010 ; who paid $776 in cash, and gave his bond for the balance, with interest on the whole amount, |gjyable annually, and a mortgage of the property. In 1831, it whs referred to the commissioner to report his proceedings, with respect to the land and the share of the fund to which Pe-drieau and wife were entitled. He reported that they were entitled to two fifteenths of the amounts paid to Butler, and to C'uttino, with interest from the time of payment, and to two fifteenths of Mr. Hunt’s bond, and made the amount then due them, $2099 08. To this report there were exceptions, which were overruled by. Chancellor Desaussube, and his decree affirmed by the Court of *91 Appeals — then consisting of three judges, but two only sitting at the hearing. Upon the certificate of the commissioner, that in making up his report of 1831, he had by mistake omitted the sum oí $5050, paid to him by Withers, and by him paid to Mr. Hunt, on account of the debt of George and Savage Smith, it was referred to him to inquire and report as to that fact; and in 1832, he made a second report including that sum. By that report, Pedrieau and wife, were entitled to $8594.87. To this report there was an exception, on the ground, that the said sum of $5050, was not paid under any process of the court, but was a voluntary diminution of the debt of George and Savage Smith, and left the land, to which alone the said Pedrieau and wife were entitled,' untouched ; that this was a private transaction without any privity between the representatives of George and Savage Smith, and Pedrieau and wife.” This exception was overruled, and the decree affirmed upon appeal. Mr. Hunt, it appears, is the assig iee of a moiety of the estate of Geo, and Savage Smith. The present bill was filed by the complainants to enforce the payment of Mr. Hunt’s bond, or the foreclosure of the mortgage, and to obtain that share of the proceeds to which they are entitled. The chancellor held himself to be bound by the report of 1832, and the decree thereon, and decreed accordingly.
I scarcely need to make any remark, on the appellant’s ground, ’ because the court ought to have given the defendants, an opportunity of trying the bill of supplement by way of cross bill, and to have thus tried the important issue, whether Micheau was possessed of a fee simple.” The chancellor reports nothing to us in relation to this matter. It was a matter altogether within his discretion. I suppose the supplemental bill, or bill of review, might have been heard if it was ready for hearing, and certainly the chancellor waa not bound to-postpone the cause before him, on a suggestion that there was a proceeding depending to invalidate the former decree.
The first ground of appeal is, “ because there is no such privity between the complainants and the defendant, B. F. Hunt, as to sustain proceedings against him.” The complainants certainly, have an interest in the fund secured by his bond and mortgage. It is admitted that they are entitled to some share of it, and they must have some means of enforcing their rights. They are not entitled to an assignment of the bond, for they are entitled only to a portion, of the money secured by it. They can only compel the commissioner to proceed by coming into this court; and coming here, upol^j} the well known principle of this court, they ought to make all *92 parties, that may be necessary for a distribution of the fund and the final adjustment of their respective rights. If the commissioner should sue at law, which is the obvious course, the defendant would be compelled to come into this court, to prevent circuity of action,. and to restrain him from collecting money, which .the defendant would be forthwith entitled to receive back ; and when it is forseea that the cause must end in equity, this is a good ground of jurisdiction in the first instance. If a bill had been filed by the commissioner, the complainants-on the principle before mentioned, must have been parties. The commissioner is made a party to this bill, and all proper parties are, therefore, before the court.
The second ground of appeal, which I shall consider, is, that the several decrees and orders before mentioned, fixing the amount which complainants are entitled to receive, “ are void, not having been confirmed by any tribunal having competent authority under the constitution to decide on the rights of the citizen, and being in open violation of the decrees formerly made.” This applies to the decrees of the former Court of Appeals, consisting of three judges. No objection is made to the authority or jurisdiction of the chancellors on circuit. The Court of Appeals is supposed to have been created in violation of that article of the constitution, which pro? vides that the judges shall meet at the conclusion of the circuits, at Charleston and Columbia, for the purpose of hearing motions for new trials in arrest of judgment, and such points of law as may be brought before them. It is supposed that by this article the circuit judges are constituted the Court. of Appeals, and that no court of separate judges could be constitutionally created.
If any constitutional question were really involved in the case, it •would be necessary to reserve it for the decisiqn of the Court of Errors But. however desirous we might be to have the judgment of the ultimate tribunal on an interesting public question, yet we should not be jusnfied in making an inofficious question, which is not in fact involved in the cause. We are of opinion, that, however the question suggested might be decided, the decree in the present .case must be affirmed.
Though not intending to decide any constitutional question, I may be permitted to observe, that 1 do not understand it to be even now urged in argument, that the article of the constitution in ques? tion, applies to the Court of Chancery. At the time of the adoption of the constitution, there were no Chancery circuits, nor any Appeal in Chancery, nor did any such thing exist for eighteen years *93 afterwards. The technical terms used in the constitution plainly apply to the law judges.
But admitting that upon the creation of Chancery circuits, the constitution attached, and made the chancellors a Court of Appeals ; then the act of 1824, creating a separate Court of Appeals was void, and it tvas the duty of the former chancellors to meet and hear appeals notwithstanding the act. It was the duty of the parties according to the act of 1808, as well as of 1824, to give notice of an appeal to the proper court. That court did not meet however., Upon what, principle, can the parties now appeal from the circuit decrees, which must he valid until they are reversed.
It may be remarked also, that no appeal has yet been taken. The present is not an appeal in the case of George and Savage Smith vs. Pedrieau et. al., but in the case of Pedrieau vs. Hunt. Nor was any such appeal taken during the last year, when an Appeal Court was in existence, Which is admitted to have been constitutional. W.e .cannot regard the circuit decree as a nullity even if we so regard the appeal decree.
Another question is made, not arising under the constitution, hut .on the construction of the act of 1824. The court created by that act consisted of three judges. It is said, that but two were present, when the decrees in question were pronounced. It is admitted to be the general rule, that when a certain number of individuals form a .commission to exercise a public function, a majority of the whole number form a quorum, and a majority of that quorum may decide. But a difference is supposed to be made in this pase, because by the act it is made the duty of the court, in case of the sickness or absence of a judge, to call in the oldest circuit judge. But it is plain that this is merely directory. It is made the duty of the two judges to call in a third, and they are responsible for the wilful neglect of it. But it is not said, that in case of neglect, their acts shall be void, or that they shall be incapable of forming a court. By the act of 1789, an executor was forbidden to seli the goods of his testator, without the permission of the Ordinary. Yet it has been always held that such a sale transferred a good title, though the executor was responsible for any injury the estate might thereby suffer, and so we decided at the last sitting of the court in Columbia. When oaths are prescribed as a qualification for office, the officer who neglects to take them is guilty of a violation of duty, and may be subject to impeachment, or to be otherwise removed from office. But while he continues in office, his acts are valid as to third persons, gee 3 Bac. Ab. 190, Tit. Offices and Officers, *94 E. The act of 1808, makes it “ the duty of all the judges of the Court of Equity to attend.” Under this, it seems to me, it might have been more strongly contended that the presence ef every judge was necessary to form a court; yet no one ever thought of such a construction. Such a construction would have rendered the act of 1824, impracticable. Upon the-aqcidental absence of a judge, the business of the court must have been suspended until the oldest circuit, judge should be summoned and attend, or if he should fail to attend, till another should be summoned and arrive. The judge who had heard a cause on the circuit was forbidden to sit on the appeal. When such a cause came on, all the judges were present, yet two must have formed the court.
But as I have said, if we regard the decrees of the Appeal Court as absolutely void, and the appeal from the circuit decrees in question, to be more properly depending before us, we should affirm those decrees upon a clear conviction of their correctness. And to shew this, will dispose of all the other grounds of appeal.
It appears to me that counsel have embarrassed themselves, and involved the case in obscurity, by taking for granted that the complainants in the case of Smith vs. Pedrieau are creditors, who by their diligence have obtained payment in part of their debts, and are called upon to refund. They were not creditors of Withers in the ordinary sense of the word. They were creditors of Mieheau, and these creditors had all the rights which Mieheau himself could have had in the fund, if the land had been sold for partition and no other. This is too plain for illustration. The decree of 1822, did not declare George and Savage Smith entitled to ten fifteenths of the land, but all the creditors of Mieheau. And if the debt of Butler, which had priority, had exhausted that portion of the proceeds of the land, the Smiths would not have been entitled to one cent. All the creditors together stand in the place of Mieheau, and any thing received by either of them must, in making a distribution, be debited to his share.
The decree of 1822, declares the creditors entitled to ten fifteenths of the entire proceeds of the sale, and Pedrieau and wife to two fifteenths. What were those entire proceeds ? Plainly the amounts paid by Withers to Butler and' Smith, and Mr. Hunt’s bond; besides the shares of Buford and wife, which are regarded as paid to them in full. The accidental circumstance of Withers’ insolvency can make no difference. All the owners of the land were entitled to their fair proportions of what he was found able to pay, *95 and the case must stand as if the land had sold for no more than that, and the amount of Mr. Hunt’s bond.
The only fund now to be distributed is that secured by Hunt’s bond ; and the only question is, how. that shall be distributed. A claim is made on the part of Smith’s estaie for ten fifteenths of the fund. But on what pretence ? All the creditors standing together, and representing Micheau, were entitled to ten fifteenths of the entire proceeds of the land. They have received an amount about equal to the present fund, and if they should now receive ten fifteenths of that, it is plain, that instead of two thirds, they would have five sixths of the entire fund. In truth, their proportion would be much larger than that. Suppose that Withers had not proved insolvent, but had now paid up the residue of his bid, and that were now in court for distribution. Can it be imagined that in addition to what they have received, they would be entitled to ten fifteenths of that residue ? And what is Hunt’s debt, but a fund substituted to make up Withers’ deficiency ?
Suppose that the land had been sold for partition, and Micheau himself were now claiming. He has received $1714, in 1824 ; he has received $1734 in 1825, and $5050 in 1826, and yet claims his proportion of the remaining fund as if he had received nothing. The claim would be as reasonable as if land were sold for distribution between two, and one should contrive to obtain his share of the purchase money from the purchaser, and then, upon the other half’s being paid into court, should claim his equal proportion of that. If after receiving his half, the purchaser should prove insolvent, then it might, perhaps, be a question whether his co-tenant should claim of him a part of what he had received ; but it is a question which does not arise in this case. Or suppose him to receive one fourth, and the purchaser to pay another fourth into court, and then become insolvent. Upon what imaginable principle could he claim an equal share of the fund in court. Those equally interested in the property, must receive equal benefits and bear an equal proportion of losses. Admit, therefore, that as a reward for his dili-geuce he would be permitted to retain what he has got, even if nothing more should be recovered, what forbids the.co-tenants being put on a footing of equality, when there comes in a further fund sufficient for the purpose ?
In what manner then, shall the fund now in court be distributed ? It is obvious, that, the only method is to bring into account, along with this fund, all that has been received by any of the parties. This will shew the aggregate proceeds of the land, of *96 which Hhe proportion of the several parties was settled by the decree of 1832. For the purposes of this case, Buford aud wife, have received their full share of the original purchase by Withers, and are entitled to nothing. The estate of Smith is entitled to such a proportion, as added to all that has been received by Mi-cheau’s creditors, will make up ten fifteenths of the aggregate fund, and Pedrieau and wife to two fifteenths of the aggregate. But in making distribution, it must be recollected that the sums received by creditors were received many years ago, and they have had the use and enjoyment of the money ever since. It would be obviously unequal und inequitable, that the present complainants, who have hitherto received nothing, should receive only their proportion of the aggregate of principal. To effect equality, interest should be' calculated on the amounts received by creditors up to the lime of distribution, and taken into account to make • up the aggregate. The commissioner ha. adopted an inartificial manner in making up the account, which no doubt has given rise to the notion of creditors’ being called on to refund, but this makes no- difference in the result. A calculation which I have made, in the manner pointed out, up to 1832, the time of the report, agrees in the result. Buford and wife, are regarded as having received their three fifteenths from Withers. There are then left of the aggregate of his other payments, and Hunt’s bond, twelve fifteenths of the entire proceeds of the laud ; of which the creditors of Micheau are entitled to ten and the complainants to two or one sixth. The decree is affirmed.
Htjnt, King and Memminger, for motion.
• Dunkin and Petigru, contra.-
Filed 2d March, 1837.
WILLIAM HARPER.
The day of sale fixed by the chancellor being passed, it is or-, dered that unless the money be paid before, the land he sold on the first Monday in April next, in pursuance of the chancellor’s directions.
With the consent of the parties interested, it is ordered, that the sale of the- mortgaged premises, be for one third cash, the balance' on a credit of one and two years, secured by bonds bearing interest from the date,.and a mortgage of the premises.
WILLIAM HARPER,
We concur,
DAVID JOHNSON,
J. JOHNSTON.